Hearing Date:  May 11, 2015 at 10:00 a.m.
Response Deadline:  May 7, 2015 at 10:00 a.m.

Andrew N. Goldman
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
New York, New York 10007
Tel:  (212) 230-8800
Fax: (212) 230-8888

*Attorneys for the Liquidating Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GETTY PETROLEUM MARKETING INC., *et al.*,<br><br>                     Reorganized Debtors. | Chapter 11<br><br>Case No. 11-15606 (SCC)<br><br>Jointly Administered |
| ALFRED T. GIULIANO, as Trustee of The Getty Petroleum Marketing Inc. Liquidating Trust,<br><br>                     Plaintiff,<br><br>           -against-<br><br><br>CAMBRIDGE SECURITIES, LLC, BJORN AASEROD, JOSEPH SCOTT KARRO, and EISENBERG & CARTON<br><br>                    Defendants. | Adversary Proceeding<br><br>No. 13-01720 (SCC) |

**LIQUIDATING TRUSTEE'S MOTION, PURSUANT TO RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND SECTION 105(a) OF THE UNITED STATES BANKRUPTCY CODE, FOR APPROVAL OF SETTLEMENT OF CLAIMS AGAINST CAMBRIDGE SECURITIES, LLC, BJORN AASEROD, <u>JOSEPH SCOTT KARRO, AND EISENBERG & CARTON</u>**

Alfred T. Giuliano, the trustee of The Getty Petroleum Liquidating Trust (the "Trustee"

of the "Liquidating Trust"), as successor in interest to the above-captioned (and now

reorganized) debtors and debtors in possession (the "Debtors" or "GPMI") files this motion (the

"Motion"), and seeks, pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C.

§§ 101, et seq. (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), entry of an order, in the form of the proposed order

attached hereto as Exhibit B, approving the settlement of all claims and causes of action asserted,

and assertable, between the Debtors and the Liquidating Trust and Bjorn Aaserod ("Aaserod"),

Joseph Scott Karro ("Karro"), Cambridge Securities, LLC ("Cambridge Securities"), and

Eisenberg & Carton ("Eisenberg," and together with Aaserod, Karro, and Cambridge Securities,

the "Defendants," and together with the Trustee, Cambridge Petroleum Corporation ("Cambridge

Petroleum") and Cambridge Petroleum Holding Inc. ("Cambridge Holding") the "Parties").  The

full terms and conditions of the settlement are set forth in the settlement agreement attached

hereto as Exhibit A (the "Settlement").[1]   In support of this Motion, the Liquidating Trustee

respectfully states as follows:

## INTRODUCTION

1.      The Trustee commenced the above-captioned adversary proceeding (the

"Adversary Proceeding") against the Defendants to recover transfers made by GPMI and its non-

debtor subsidiary, Cambridge Petroleum Headquarters, LLC ("Cambridge Headquarters"), to or

for the benefit of the Defendants.  The Adversary Proceeding, which was scheduled for trial in

May 2015, has been hard fought on both sides, commencing with the Complaint and Answer;

---

[1] The description of the settlement agreement contained in this Motion is for illustrative purposes only.  The settlement agreement itself contains the complete description of the terms and conditions upon which the Parties have agreed to resolve their disputes.  Capitalized terms not defined herein shall have the meaning ascribed to such terms in the settlement agreement.

briefing and an argument on this Court's Constitutional authority to adjudicate the claims

asserted against the Defendants; the assertion of counterclaims by the Defendants and motion

practice resulting in the dismissal of those counterclaims and the Defendants' appeal of that

dismissal; exhaustive mediation; and an involved discovery process, including the production of

thousands of documents and the taking of fact and expert depositions (after exchange of expert

reports).  If the Adversary Proceeding were to proceed to trial, complex issues would need be to

addressed, including, but not limited to, whether GPMI and Cambridge Headquarters were

insolvent at the time of the transfers to the Defendants (or rendered insolvent as a result thereof);

whether and to what extent GPMI and Cambridge Headquarters received reasonably equivalent

value or fair consideration in exchange for certain transfers, which in turn requires an analysis of

Aaserod's and Karro's Services Agreements with the Debtors and Cambridge Headquarters, as

well as litigation currently being pursued by a Cambridge Securities affiliate against Lukoil

Americas Corporation in New York state court; and whether the Defendants against whom the

Trustee has asserted claims to avoid preferential transfers have any defenses to those claims.

2.      Although the Trustee believes that the facts of this Adversary Proceeding, well-

settled law, and evidence obtained during discovery demonstrate (and would demonstrate at trial)

the Defendants' liability (which the Defendants dispute), the Trustee recognizes that its claims

and the Defendants' defenses to those claims raise substantial and complex legal issues and

factual disputes concerning the Defendants' liability and that further issues may be raised

approaching and at trial.  The issues already raised render the outcome of any final litigated

resolution of the Trustee's claims uncertain, unpredictable, and costly.  Given the uncertainty and

expense of continued litigation, including the possibility of appeal, it is the Trustee's considered

business judgment that ending the litigation and entering into the Settlement is in the best interests of all of the Debtors' creditors.

3.      Overview of Settlement Terms.  Pursuant to the Settlement, the Liquidating Trust will receive $1.6 million in cash upon the effective date of the Settlement, plus the proceeds of the sale of certain leasehold interests in certain properties (backstopped by Aaserod and secured by a second mortgage on his personal residence).  The Settlement also preserves the Liquidating Trust's right to repayment of the Debtors' $1.6 million pre-bankruptcy loan (plus 5% interest, for a total of approximately $2 million) to Cambridge Securities to fund litigation in New York state court arising from the purchase of GPMI in February 2011, if and when there is a recovery in that litigation.[2]  The Liquidating Trust will also be entitled to an additional 10% of any recovery in the New York state court litigation in excess of the amount required to repay the Debtors' pre-bankruptcy loan (and certain attorneys' fees in connection with the prosecution of that litigation).  Finally, the Trustee will have the right to obtain a judgment against the Defendants in the amount of $6.4 million (minus any amounts already paid by the Defendants under the Settlement) in the event of certain breaches or defaults by any of the Defendants under the Settlement.  The Liquidating Trust's recovery under the Settlement is capped at $6.4 million.

4.      The Settlement will thus provide a significant additional sum of money to distribute to the Debtors' creditors and will bring to a close the Trustee's claims against the Defendants and the Defendants' potential counterclaims against the Trustee, allowing the Trustee to focus on the resolution of the remaining outstanding claims in the Debtors' chapter 11 cases. Accordingly, the Trustee requests that the Court grant the Motion and approve the Settlement in all respects.

---

[2] The entity that purchased GPMI from Lukoil, and which is prosecuting the New York state court litigation, is a non-debtor and non-defendant: Cambridge Holding.

## JURISDICTION AND STATUTORY PREDICATES FOR RELIEF

5.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this

Court under 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are

Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

*The Debtors' Bankruptcy Cases*

6.      On December 5, 2011 (the "Petition Date"), each of the Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  Also on the Petition

Date, the Court issued an order authorizing the joint administration of the Debtors' estates.  On

August 24, 2012, the Court entered, pursuant to section 1129 of the Bankruptcy Code, the

*Findings of Fact, Conclusions of Law and Order Confirming the Plan of Liquidation for Getty*

*Petroleum Marketing Inc. and Its Subsidiary Debtors* (the "Confirmation Order") [Docket No.

714], confirming the *First Amended Plan of Liquidation for Getty Petroleum Marketing Inc. and*

*its Subsidiary Debtors Proposed by Official Committee of Unsecured Creditors* (as amended or

modified, the "Plan").

7.      On September 24, 2012, the Plan became effective (the "Effective Date"), and

pursuant to the Plan and the Confirmation Order, the Liquidating Trust was established, the

appointment and designation of the Trustee was approved, and the Liquidating Trust Assets (as

defined in the Plan)—including the claims and causes of actions against the Defendants in this

Adversary Proceeding—were conveyed and transferred to the Liquidating Trust.  *See* Plan, §§

1.2, 8.1, 8.8(b), and Schedule 1.2 thereto.

8.      Pursuant to the terms of the Liquidating Trust Agreement, dated September 24,

2012, the Trustee is authorized to seek Court approval of a settlement of litigation such as this

(with or without) the approval of the Trust Oversight Committee (the "Oversight Committee"). The Oversight Committee is comprised of the Trustee (as representative of the claim held by Bionol Clearfield LLC, the Debtors' largest unsecured creditor), Fredrick Schmidt (as representative of a group of former GPMI station dealers), and a designee of Getty Realty Corp. Here, the Settlement enjoys the support of a majority of the Oversight Committee.

***The Adversary Proceeding***

9.     The Liquidating Trustee commenced this Adversary Proceeding against the Defendants on November 26, 2013, by filing a 49-count complaint, seeking to avoid and recover approximately $6.5 million in transfers made by the Defendants from GPMI and Cambridge Headquarters.

10.     In the complaint, the Trustee asserted claims against the Defendants to avoid and recover constructive fraudulent conveyances under Bankruptcy Code sections 548 and 550, and/or under New York law.   The Liquidating Trustee also asserted claims to avoid and recover preferential transfers under Bankruptcy Code section 547 and claims to avoid and recover unauthorized post-petition payments under Bankruptcy Code section 549 against Defendants Cambridge Securities, Aaserod and Karro.  Additionally, the Liquidating Trustee asserted a claim to avoid and recover a constructive fraudulent conveyance against Defendant Eisenberg under New York law.  Finally, the Complaint sought to disallow the claims filed by Defendants Aaserod and Karro pursuant to Bankruptcy Code section 502(d).[3]

11.     The Trustee's claims against the Defendants arise from the transfer of funds from GPMI to, or for the benefit of, the Defendants in connection with: (i) a so-called "Success Fee Agreement" related to the Stock Purchase Agreement governing the terms of Cambridge

_____

[3] Defendant Aaserod filed proofs of claim numbers 863, 876, 877,  and 878.  Defendant Karro filed proofs of claim numbers 874, 875 and 879.  These claims have been deemed withdrawn pursuant to the Order Determining Court's Authority Pursuant to 28 U.S.C. §157(b)(3) [Adv. Pro. Docket No. 29].

Securities' affiliate's purchase of GPMI in February 2011; (ii) payments by the Debtors to American Express for the Aaserod family's personal travel expenses; and (iii) Service Agreements executed by Aaserod and Karro.  Additionally, the Trustee's claims against the Defendants arise from the transfer of certain assets from Cambridge Headquarters, a non-debtor subsidiary of GPMI, in connection with: (i) Service Agreements executed by Aaserod and Karro; and (ii) a Joint Prosecution/Common Interest Agreement executed in connection with New York state court litigation involving Cambridge Holding and Lukoil Americas Corporation arising from the sale of GPMI.  The claims arising from payments made by Cambridge Headquarters are based on an intercompany receivable owed by Cambridge Headquarters to GPMI for $2.108 million, as described in Form B26 signed by Defendant Karro.  The Trustee alleges that from the time of the Stock Purchase Agreement, well into GPMI's bankruptcy, and through to August 2012—all while both GPMI and Cambridge Headquarters were insolvent—the Defendants (other than Eisenberg) transferred funds from GPMI and Cambridge Headquarters, for their own benefit, and that neither the Debtors nor Cambridge Headquarters received reasonably equivalent value or fair consideration for the respective transfers.

12.     On January 31, 2014, the Defendants filed an Answer to the Complaint, denying the claims therein and asserting various defenses.  The Parties then engaged in briefing addressing this Court's Constitutional authority to adjudicate the claims asserted in the Adversary Proceeding.  On May 28, 2014, the Court entered an order holding that it has authority over the Trustee's claims.

13.     Discovery in the Adversary Proceeding commenced in March 2014, with the Parties engaging in written discovery, and preparing to exchange thousands of pages of

documents.  However, at a hearing held on April 30, 2014, the Court directed the Parties to enter

into mediation, at which point discovery was postponed during the pendency of mediation.

14.    Mediation commenced on May 14, 2014 before Judge Glenn.  Counsel for both

the Trustee and the Defendants presented their respective cases to Judge Glenn, and each side

spent significant time discussing their arguments with Judge Glenn privately.  The Parties

participated in a number of follow-up mediation sessions, but mediation ultimately proved

unsuccessful.  On August 12, 2014, the mediation was concluded with the parties having reached

an impasse, and the litigation was reinitiated.

15.    On September 15, 2014, the Defendants filed an Amended Answer and

Counterclaims.  On October 6, 2014, the Trustee moved to dismiss the Defendants'

counterclaims.  The Court dismissed the Defendants' counterclaims on November 5, 2014.  The

Defendants appealed the Court's decision to the U.S. District Court for the Southern District of

New York (the "District Court").  The Trustee moved to dismiss the appeal on the basis that the

District Court lacked jurisdiction, and the Parties ultimately agreed to the dismissal of the appeal,

provided that the Defendants' appellate rights were preserved following any final judgment in

the Adversary Proceeding.

16.    On January 16, 2015, the Trustee filed a First Amended Complaint, which the

Defendants answered on February 13, 2015.

17.    In preparation for trial, the Parties have completed document production, resulting

in the production of hundreds of thousands of pages of material.  The Parties have conducted

depositions of the relevant fact witnesses, including Defendants Aaserod and Karro and the

Trustee and had begun conducting depositions of expert witnesses.  Ultimately, the Parties

reengaged in settlement discussions, and were able to reach consensus on terms acceptable to the Parties to avoid the time and expense of conducting the trial.

***The Settlement***

18.     Although the Trustee believes that the full amount of the transfers by the Defendants are avoidable, and that the Liquidating Trust is entitled to judgment on all counts in the Adversary Proceeding—all of which the Defendants dispute—the Trustee also recognizes that there are substantial risks, uncertainties and costs associated with proceeding to trial and collecting on any judgment it may obtain against the Defendants.  In addition, the Trustee recognizes that the Defendants may seek to appeal any ruling in favor or the Trustee, including by reinitiating their appeal of the dismissal of their counterclaims against the Trustee. Accordingly, the Trustee believes that the Settlement, which settles all claims and causes of action between the Parties, is in the best interests of the Liquidating Trust and its creditors.

19.     The principal terms of the Settlement are as follows:

> a.  The Settlement.  Pursuant to the terms of the Settlement, the Defendants, Cambridge Holdings and Cambridge Petroleum (the "Cambridge Parties"), on the one hand, and the Trustee, on behalf of himself and the respective estates of the Debtors, on the other hand, settle all Claims (as subsequently defined) between them arising out of or related to the Adversary Proceeding and the Chapter 11 Cases, as more particularly set forth in the respective releases of Sections 9 and 10 hereof.  To effectuate the Settlement, the Cambridge Parties shall pay to the Trustee the maximum sum of Six Million Four Hundred Thousand US Dollars ($6,400,000) (the "Maximum Amount"), payable, in cash or by delivery of documents, as the case may be, as set forth in Sections 3, 4(c), 4(k) (subject to the provisions of Section 5), and 4(m) of the Settlement (the "Obligations"). Upon the delivery by the Cambridge Parties to the Trustee of the payments and documents required by such Sections, the Cambridge Parties shall be deemed to have satisfied the Obligations in full, irrespective of whether the Trustee receives or recovers the Maximum Amount, or any amount in excess of the payments required by Sections 3 and 4(m), or any of the JPA Payment.  In such case, the Trustee shall have no further or different recourse against the Defendants or the other Cambridge Parties with respect to the Obligations, and the Claims shall be deemed to have been released in accordance with Section 9 of the Settlement as more

8

particularly set forth therein.  Notwithstanding the foregoing, nothing contained in this Section shall limit or otherwise affect the Trustee's contingent right to receive the JPA Payment and/or the Supplemental Litigation Payment, if and to the extent the recoveries from the State Court Litigation are sufficient to make such payments, or the Trustee's rights against the Cambridge Parties with respect thereto.

b.  Effective Date.  The Settlement shall become effective on the date on which all of the following conditions precedent (the "Conditions Precedent") have been satisfied (or waived by the Trustee in his sole discretion) (the "Effective Date"): (i) the Court has entered an order pursuant to Fed. R. Bankr. P. 9019 in the form attached to this Motion as Exhibit B granting this Motion and approving the Settlement in all respects (the "Rule 9019 Order"), which order shall be in form and substance acceptable to all parties in their reasonable discretion; (ii) the Initial Settlement Payment (as defined below) has been made by wire transfer to the Trustee; (iii) the Rule 9019 Order has become final and no longer appealable; (iv) the Trustee has received the Aaserod Property Appraisal (defined below) in accordance with Section 4(k) of the Settlement; (v) the Trustee has received from Aaserod the executed Aaserod Property Mortgage (defined below), subject only to the First Mortgage (defined below), in accordance with Section 4(k) of the Settlement; (vi) the Trustee has received the Property Interest Documents (defined below) in accordance with Section 4(c) of the Settlement; (vii) the Property Sale Transaction Documents (defined below) have been placed into escrow in accordance with Section 4(c) of the Settlement ; and (viii) the State Court Litigation (defined below) has not been resolved or settled at the time all other Conditions Precedent have been satisfied, for any amount that would – after payment of all attendant fees and expenses – not result in the Trustee receiving the full amount of the JPA Payment (defined below).

c.  Initial Settlement Payment.  Within ten (10) days after the Rule 9019 Order becoming final and nonappealable, the Defendants shall wire, or cause to be wired, to an account designated by the Trustee, the sum of One Million Seven Hundred Seventy Five Thousand US Dollars ($1,775,000.00) (the "Initial Settlement Payment").

d.  On or before the date that is six (6) months from the Effective Date (the "Initial Sale Deadline"), Cambridge Petroleum shall, using a sales broker selected by the Trustee, reasonably acceptable to Cambridge Petroleum (the "Broker"), sell all of its right, title, and interest to the leasehold and contractual interests in the properties listed on Exhibit A to the Settlement (each individually, a "Property," and collectively, the "Properties") through one or more sales to one or more purchasers, with the proceeds of such sales paid to an escrow account with the Trustee or the Trustee's

9

attorneys for disbursement in accordance with the terms of the Settlement (each individually, a "Property Sale," and collectively, the "Property Sales").

a. Within seven (7) days of the execution of the Settlement, Cambridge Petroleum shall deliver to the Trustee all leases and other contracts related to the Properties or its interests in the Properties as are in its possession, custody, or control, which documents must be reasonably acceptable to the Trustee in its sole but reasonable discretion (the "Property Interest Documents"). Within three (3) business days of the Rule 9019 Order becoming final and nonappealable, Cambridge Petroleum shall execute and deliver into escrow with the Trustee all customary and typical for property transactions of the nature contemplated herein instruments and other documents, in form and substance reasonably acceptable to the Trustee in its sole discretion, necessary and appropriate to consummate each of the Property Sales (the "Property Sale Transaction Documents"). The Property Sale Transaction Documents shall expressly provide that the proceeds of the Property Sales shall be paid to an escrow account with the Trustee or the Trustee's attorneys for disbursement in accordance with the terms of the Settlement. Cambridge Petroleum makes and appoints through the Settlement Lloyd Eisenberg as its true and lawful attorney in its name, place, and stead, for the purpose of taking, with the consent of the Trustee, any actions necessary or advisable to consummate any or all of the Property Sales, including without limitation by modifying the terms of the Property Sale Transaction Documents in his sole discretion, in any manner he deems consistent with intent of the Parties.

b. At the closing of each of the Property Sales, the proceeds of the Property Sale at issue shall be paid into an escrow account with the Trustee or the Trustee's attorneys and thereafter distributed as follows: (a) first, to pay third-party closing costs associated with the Property Sale, including broker's fees, costs and expenses, provided, however, that the Defendants and/or their affiliates shall not receive any direct or indirect payments under this provision; and (b) next, to the Trustee in full amount of the proceeds remaining after payment of the costs identified in clause (a) of this Subsection.

c. The applicable Property Sale Transaction Documents (as the same may have been modified by Lloyd Eisenberg, as provided in Section 4(c) of the Settlement) may be released from escrow by the Trustee to the applicable buyer upon the closing of a Property Sale with no further action by the Defendants or Cambridge Petroleum.

d. To address the possibility that the Trustee does not receive the sum of at least One Million Eight Hundred Thousand US dollars ($1,800,000.00) in net proceeds from the Property Sales (the "Minimum Sale Amount") by the Initial Sale Deadline or any Extended Sale Deadline, as applicable, and

10

subject to the provisions of Section 5 of the Settlement, Bjorn Aaserod shall, within three (3) business days of the Rule 9019 Order becoming final and nonappealable deliver to the Trustee a mortgage on the Aaserod Property (defined below) in the amount of Four Hundred Twenty Five Thousand US Dollars ($425,000.00), in form and substance reasonably acceptable to the Trustee in its sole discretion (the "Aaserod Property Mortgage"). The Aaserod Property Mortgage shall be executed by Aaserod and his wife, Cynthia Aaserod. The Trustee shall cause the Aaserod Property Mortgage to be recorded in the applicable real property records. Except as otherwise provided in the Settlement , the Aaserod Property Mortgage shall be subject only to the First Mortgage. On or before the date the Rule 9019 Order has become final and nonappealable, Aaserod shall have provided the Trustee with an appraisal of the Aaserod Property (defined below) performed by a third party appraiser reasonably acceptable to the Trustee, which appraisal reflects a value of at least Six Million US Dollars ($6,000,000) (the "Aaserod Property Appraisal"), provided, however, that if the appraised value of the Aaserod Property is less than Six Million US Dollars ($6,000,000), it must be acceptable to the Trustee in its sole but reasonable discretion.

e.  Prior to the expiration of the Initial Sale Deadline or any Extended Sale Deadline, as applicable, Aaserod shall have the right, but not the obligation, to make a cash payment to the Trustee for the purpose of reducing the amount of the Aaserod Property Mortgage and the amount of the Shortfall Funding Obligation; provided that any such partial payment shall be in an increment of not less than One Hundred Thousand US Dollars ($100,000) (the aggregate of any such payments, the "Pre-Paid Amount"). In the event and to the extent Aaserod makes any such payments, the Aaserod Property Mortgage shall be reduced by the Pre-Paid Amount, and the document memorializing such mortgage, and any document filed in connection therewith, shall be amended by the Trustee within three (3) business days of any such payment to reflect such reduction in the amount of the Aaserod Property Mortgage.

f.  If the Trustee has not received the Minimum Sale Amount by the Initial Sale Deadline or any Extended Sale Deadline, as applicable, Aaserod shall pay to the Trustee: (a) within thirty (30) days of the Initial Sale Deadline or any Extended Sale Deadline, the lesser of (i) Two Hundred Twenty Five Thousand US Dollars ($225,000.00) minus the Pre-Paid Amount, and (ii) the Sale Deficit (defined below) minus the Pre-Paid Amount, or (b) if Aaserod does not make the payment specified in Section 4(m)(a) of the Settlement within such thirty (30) day period, then within ninety (90) days of the Initial Sale Deadline or any Extended Sale Deadline, the lesser of (i) Four Hundred Twenty Five Thousand US Dollars ($425,000.00) minus the Pre-Paid Amount, and (ii) the Sale Deficit (defined below) minus the Pre-Paid Amount (such payment, the "Shortfall Funding Obligation"). The

11

"Sale Deficit" means an amount equal to the difference between (i) the Minimum Sale Amount and (ii) the net proceeds received by the Trustee under paragraph 4(d) of the Settlement from the Property Sale(s). If Aaserod does not pay the Shortfall Funding Obligation when and as provided for in the Settlement, the Trustee may exercise its rights under the Aaserod Property Mortgage, including without limitation by foreclosing upon the Aaserod Property, for the purpose of satisfying the Shortfall Funding Obligation. Up to the Maximum Amount the Trustee may release from escrow and credit against its contingent right to receive the JPA Payment and the Supplemental Litigation Payment any net proceeds in excess of the Minimum Sale Amount.

g.  Prior to the expiration of the Initial Sale Deadline or any Extended Sale Deadline, as applicable, Aaserod shall have the right, but not the obligation, to make a cash payment to the Trustee for the purpose of reducing the amount of the Aaserod Property Mortgage and the amount of the Shortfall Funding Obligation; provided that any such partial payment shall be in an increment of not less than One Hundred Thousand US Dollars ($100,000) (the aggregate of any such payments, the "Pre-Paid Amount"). In the event and to the extent Aaserod makes any such payments, the Aaserod Property Mortgage shall be reduced by the Pre-Paid Amount, and the document memorializing such mortgage, and any document filed in connection therewith, shall be amended by the Trustee within three (3) business days of any such payment to reflect such reduction in the amount of the Aaserod Property Mortgage.

h.  The Aaserod Property Mortgage shall be released and discharged in full and the Trustee shall take all acts, and shall cause the filing of any documents, necessary and appropriate to effect such release and discharge within three (3) business days of the earliest to occur of the following: (i) the Trustee has received the Minimum Sale Amount, (ii) the Trustee has received the Shortfall Funding Obligation, if and to the extent due hereunder, and (iii) the Pre-Paid Amount equals Two Hundred Twenty Five Thousand US Dollars ($225,000).

i.  Trustee's Retained Interest in Joint Prosecution Agreement. For the avoidance of doubt, the Trustee, as the assignee of Cambridge Petroleum Headquarters LLC ("Cambridge Headquarters"), shall retain all interest of Cambridge Headquarters in the Joint Prosecution/Common Interest Agreement, dated November 8, 2011 by and among GPMI, Cambridge Holding, Cambridge Headquarters, and Cambridge Securities (the "Joint Prosecution Agreement") relating to New York state court litigation, Index No. 65008/2012 (the "State Court Litigation"). Specifically and without limiting the foregoing, the Trustee shall be entitled to receive payment of One Million Six Hundred Thousand US Dollars ($1,600,000.00), plus five percent (5%) interest, or such lesser amount finally recovered from

the State Court Litigation, in accordance with the Joint Prosecution Agreement and the Settlement (the "JPA Payment"). The JPA Payment shall be paid to the Trustee within five (5) business days of the receipt in Eisenberg's escrow account of any recovery (whether by judgment, settlement, or otherwise) in or relating to the State Court Litigation.

Trustee's Supplemental Interest in the State Court Litigation. In addition to and without limiting the Trustee's existing interest in the State Court Litigation under the Joint Prosecution Agreement, the Trustee shall be entitled to ten percent (10%) of any recovery in or relating to the State Court Litigation (whether by judgment, settlement, or otherwise) in excess of the JPA Payment (the "Supplemental Litigation Payment"). The Supplemental Litigation Payment shall be paid to the Trustee within five (5) business days of the receipt in Eisenberg's escrow account of any recovery (whether by judgment, settlement, or otherwise) in or relating to the State Court Litigation.

j.   Priority of JPA Payment and Supplemental Litigation Payment. Notwithstanding anything to the contrary in the Joint Prosecution Agreement, any other agreement, or under applicable law, the Parties agree that any recovery in or relating to the State Court Litigation shall be paid to an escrow account maintained by Eisenberg and shall be paid by Eisenberg from such escrow account as follows:

  i.   Until the Trustee has received the full amount of the JPA Payment: 85% to the Trustee and 15% to Eisenberg; and

  ii.  From the time the Trustee has received the full amount of the JPA Payment until the Trustee has received all amounts due to it under the Settlement: 10% to the Trustee (on account of the Supplemental Litigation Payment), with the remaining 90% to Cambridge Holding, subject to that certain letter dated December 2, 2011 between Eisenberg and Cambridge Holding, as amended.

k.   Release by Trustee. The Trustee, for himself and on behalf of the Trust, the Debtors, the Debtors' bankruptcy estates, their respective successors and assigns, and anyone claiming by, through, or on behalf of any of them, upon the Effective Date, forever, fully, irrevocably, and unconditionally releases and discharges the Defendants and their respective predecessors in interest, successors in interest, family members, transferees, present and former affiliates, parents, subsidiaries and controlled companies, all past and present member firms, and all of their present and former agents, representatives, officers, directors, managers, employees, in their capacity as such, attorneys, consultants, accountants, partners, and the successors and assigns of each of them (collectively, the "Trustee's Released Parties") from all manner of claims for relief, causes of action, legal duties, obligations, covenants, contracts, controversies, agreements, promises, damages, judgments, and demands whatsoever, of whatever

13

kind or nature, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, matured or unmatured, whether direct or indirect, individual, class, derivative, representative or other capacity, existing or hereafter arising, in law or in equity, that have been or could have been asserted (or in the future could be or might be asserted) (collectively, "Claims") based on any acts, omissions, legal duties, representations, events or occurrences that transpired on or before the Effective Date, including but not limited to all claims, counterclaims, and causes of action in the Adversary Proceeding (such released claims collectively, the "Trustee's Released Claims").  The release, however, shall not release, discharge, affect, or modify any claims arising from or relating to any obligations, representations or warranties and covenants under the Settlement or, with respect to transferees of the Defendants, any Claims not arising from or related to the transfers that are the subject of the Adversary Proceeding.

l.    Release by Defendants.  The Defendants and their respective successors and assigns, and anyone claiming by, through, or on behalf of any of them, upon the Effective Date, forever, fully, irrevocably, and unconditionally release and discharge the Trustee, the Trust, the Debtors, the Debtors' bankruptcy estates, and their respective predecessors in interest, successors in interest, present and former affiliates, parents, subsidiaries and controlled companies, all past and present member firms, and all of their present and former agents, representatives, officers, directors, managers, employees, in their capacity as such, attorneys, consultants, accountants, partners, and the successors and assigns of each of them (collectively, the "Defendants' Released Parties") from all Claims based on any acts, omissions, legal duties, representations, events or occurrences that transpired on or before the Effective Date, including but not limited to all claims, counterclaims, and causes of action in the Adversary Proceeding and all claims set forth in any proofs of claims filed in the Chapter 11 Cases and any claims that Defendants might be entitled to file under Section 502(h) of the Bankruptcy Code (such released Claims, collectively, the "Defendants' Released Claims").  The release, however, shall not release, discharge, affect, or modify: (a) any claims arising from or relating to any obligations, representations or warranties and covenants under the Settlement, (b) any claims any of the Defendants or any of their affiliates may have against Akin Gump Strauss Hauer & Feld LLP, including without limitation the claims brought by Defendants Aaserod, Karro, and Cambridge Securities as third-party plaintiffs in the Adversary Proceeding, or (c) any claims any of the Defendants or any of their affiliates, including Cambridge Petroleum, may have against Lukoil Americas Corporation, Lukoil North America LLC, OAO Lukoil, or any of their affiliates, including without limitation the claims asserted in the State Court Litigation.

14

m. <u>Judgment</u>.  From and after the Effective Date, in the event of any breach or default of the Settlement by any of the Defendants, Cambridge Petroleum, or Cambridge Holding, the Trustee may obtain – and the Defendants consent to the entry of – a judgment against the Defendants in the amount of Six Million Four Hundred Thousand US Dollars ($6,400,000.00), plus interest, costs, attorney's fees, collection costs, and any other damages or relief resulting from such breach or default, as permitted by law, less any amount previously paid to or recovered by the Trustee under the Settlement (the "<u>Judgment</u>").  The Trustee shall be entitled to enforce and collect against Eisenberg only 5.5% of the amount of any Judgment.  The Trustee may obtain the Judgment on five (5) business days' notice to the Defendants upon filing with the Court an affidavit of an attorney for the Trustee: (a) attesting that one or more of the Defendants, Cambridge Petroleum, or Cambridge Holding have breached or defaulted on one or more provisions under the Settlement, (b) specifying the specific provisions breached or defaulted on, the basis for any such alleged breach or default and the identity of the Cambridge Party or Parties alleged to have committed such breach or caused such default, and (c) specifying the amount of the Judgment requested by the Trustee and providing an accounting of all amounts received or recovered by the Trustee under the Settlement as of the date of the affidavit.  With respect to defaults or breaches other than those relating to the failure to make payments as and when required under the Settlement, in such 5 business days' notice period, the Defendants retain the right to (i) cure any such default or breach, or (ii) raise any argument related to the default or breach with the Court and seek relief therein.  For the avoidance of doubt, any default or breach relating to the failure to make payments as and when required under the Settlement shall not be subject to the five (5) business day cure period.  Any Judgment obtained by the Trustee in accordance with the terms of the Settlement shall not be enjoined by any other court, and the Defendants shall seek no other or further relief with respect to the same.

### *The Trustee's Authority to Enter into the Settlement*

20.    Pursuant to the Plan, the Debtors entered into the Liquidating Trust Agreement.

The Liquidating Trust Agreement provides that the Trustee may manage the Liquidating Trust

Assets subject to specific limitations set forth in the Liquidating Trust Agreement or the Plan.

The Liquidating Trust Agreement requires that before taking certain actions, including actions

with respect to any Liquidating Trust Asset that involves value or consideration in excess of

$50,000, either that (i) the Trustee obtain the consent of the majority of the Oversight

Committee, Liquidating Trust Agreement ¶¶ 2.10, 3.2(a), or (ii) if the Trustee receives

Bankruptcy Court approval to take such action, a majority vote of the Oversight Committee is

not required, *id.* ¶ 3.2(c).

21.    Accordingly, although the Oversight Committee's approval of the Settlement is

not necessary if the Court grants this Motion and approves the Settlement, counsel for the

Trustee advised the Oversight Committee of the proposed settlement, and recommended

approval of the Settlement.  The members of the Oversight Committee unanimously support the

Settlement.

## BASIS FOR RELIEF REQUESTED

### *Standards for Approving Settlement*

22.    Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after

notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P.

9019(a).  In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the

proposed settlement is fair and equitable and in the best interests of the estate.  *See Protective*

*Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424

(1968); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *In re Drexel*

*Burnham Lambert Group*., 960 F.2d 285, 292-93 (2d Cir. 1992).  A finding under Rule 9019(a)

is committed to the sound discretion of the Court, which should exercise that discretion in light

of the public policy that favors settlement of disputed claims.  *See In re Hibbard Brown & Co.*,

217 B.R. 41, 45 (Bankr. S.D.N.Y. 1998); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D.

46, 53 (S.D.N.Y. 1993).

23.    While the bankruptcy court should apprise itself of "all facts necessary for an

intelligent and objective opinion of the probabilities of ultimate success should the claim be

litigated," in determining whether a settlement is fair and equitable, *see TMT Trailer Ferry*, 390

16

U.S. at 424, the court need not determine and rule upon disputed facts and questions of law.

Rather, the court need only "canvass the issues and see whether the settlement falls below the

lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Group., Inc.*, 134

B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991) (internal quotations omitted) (*quoting Cosoff v.*

*Rodman (In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983)).  In evaluating the

reasonableness of a settlement, the court should give considerable weight to a trustee's informed

judgment that a compromise is fair and equitable.  *TMT Trailer*, 390 U.S. at 444; *In re Carla*

*Leather, Inc.*, 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985);  *In*

*re Drexel Burnham Lambert*, 134 B.R. at 496.  The role of the Court is not to substitute its

judgment for the trustee's, but to instead check the reasonableness of the trustee's decision.  *In re*

*Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998), *aff'd*, 235 B.R. 734 (S.D.N.Y.

1999).

24.    In determining whether a settlement falls within the broad range of

reasonableness, Courts consider several interrelated factors.  As laid out by the Second Circuit,

these factors include:  (1) the probability of success in the litigation and the benefit of the

settlement; (2) the likelihood of complex and protracted litigation, and its related expense,

inconvenience, and delay; (3) the interests of the creditors and the extent to which creditors

support or do not object to the settlement; (4) whether other parties support the settlement; (5)

the "'competency and experience of counsel'" supporting the settlement and the experience and

knowledge of the bankruptcy judge reviewing it; (6) the releases to be issued as a result of the

settlement; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478

F.3d 452, 461-62 (2d Cir. 2007) (citing *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr.

17

S.D.N.Y. 2006)).  *See also In re Ashford Hotels*, 226 B.R. at 802; *In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994); *see also TMT Trailer Ferry*, 390 U.S. at 424; *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990); *Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986).  These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the costs of the proposed settlement.

### The Settlement Is Fair and Equitable and in the Interests of Creditors

25.    An evaluation of the factors outlined by the Second Circuit in *Iridium* supports approval of the Settlement.  While the possibility of a larger recovery with continued litigation exists, given the many unresolved legal issues and factual disputes that have been identified so far and those that are sure to arise with continued litigation, the probability of such a recovery is very difficult to quantify, and any enhancement in the amount recovered through additional litigation is likely to be offset by the additional cost of continued litigation and delay in payment. Moreover, the possibility of a lower recovery or even no recovery after further litigation cannot be ruled out.  The benefit of the Settlement to creditors is proportionally significant in light of the expense of litigation and the amount remaining in dispute.  Accordingly, it is the judgment of the Trustee, based on all the facts and arguments that have so far been developed during written discovery and mediation, and with the advice of experienced and knowledgeable trial and bankruptcy counsel, that the settlement is in the best interests of the creditors.

> i.    **Without the Settlement, the Amount of any Recovery in the Adversary Proceeding is Uncertain and Complex and Protracted Litigation Will be Required to Obtain a Higher Recovery**

26.    The Trustee's claims against the Defendants present complex legal issues and factual disputes, and litigating those issues to final resolution is fraught with uncertainty and

likely would require protracted and expensive litigation.  Because of the factual and legal

disputes involved, the possibility of appeal is considerable.

27.    The Trustee has asserted claims for constructive fraudulent conveyance and

alleges that both GPMI and Cambridge Headquarters were insolvent, and that neither received

reasonably equivalent value or fair consideration in exchange for the respective transfers at issue.

However, the Defendants dispute that claim.  Resolving this dispute would require expert

testimony on these issues.

28.    There is no doubt that litigating all of these issues to resolution would be

expensive and time consuming.  Discovery has not yet concluded, with the majority of expert

depositions still to be conducted.  Trial, tentatively scheduled for May 2015, could take as much

as a week (perhaps longer).  If there were an appeal—and given the number of issues and amount

of money at issue, the probability of an appeal seems considerable (indeed, the Defendants

already appealed the dismissal of their counterclaims to the District Court)—those costs would

be substantially higher and the length of time before any payments could be made to creditors

and the Liquidating Trust could be wound up would be substantially longer (perhaps elongated

by years).

ii.    **The Settlement is in the Best Interests of Creditors**

29.    As described above, the Settlement provides significant benefit to the creditors.  It

provides for a prompt payment of $1.6 million to the Liquidating Trust, plus a recovery of $1.8

million from the sale of certain properties (backstopped by Aaserod).  It also provides that the

Trustee will share in any recovery in the State Court Litigation, both by retaining its right to

repayment of the Debtors' pre-bankruptcy loan in connection with that litigation, and by

obtaining an additional 10% interest in any such recovery.  This recovery will undoubtedly be

beneficial to the Debtors' estates and creditors.  Resolution of the claims now—rather than after

continued litigation and perhaps years of appeal—means faster payments to creditors.  It also minimizes the Liquidating Trust's expenses, which directly reduce any recovery to creditors. The Trustee believes in the prudent exercise of his business judgment, that the uncertain possibility of a larger recovery, as well the need to collect any such award, does not warrant the risk of a lower recovery or the additional expense that pursuing that recovery would entail, and such determination is supported by the Oversight Committee.  To the Trustee's knowledge, no other creditor or party in interest intends to object to the Settlement.

### iii.        Counsel and the Court are Experienced and Knowledgeable About the Issues Relating to the Claims

30.        In making the judgment that entering into the Settlement rather than continuing to litigate the claims is in the best interests of the creditors, the Trustee has the benefit of experienced bankruptcy and trial counsel who have had ample opportunity to understand the issues and develop the facts as available through several months of briefing and the beginning of discovery.  In addition, the Court, having presided over the pretrial proceedings, and having reviewed submissions made by both Parties, is well situated to "test [the Trustee's] choice for reasonableness."  *In re Ashford Hotels*, 226 B.R. at 802.  Like counsel, the Court is now familiar with the factual disputes and the legal issues raised by the Trustee's claims.

### iv.        The Releases Obtained by the Defendants are Reasonable

31.        Pursuant to the terms of the Settlement, the Parties have agreed to mutual global releases of all claims between the Defendants and the Liquidating Trust and the Debtors, and their respective officers, directors, agents and attorneys.  While the releases given to Defendants are broad, as part of the overall resolution of claims they are reasonable because they are a part of mutual releases in which Defendants are granting the Trustee, the Liquidating Trust, and the Debtors and their bankruptcy estates equally broad releases.

v.        **The Settlement is the Product of Arm's Length Bargaining**

32.      Finally, there is no question that the Settlement is the product of arm's length

bargaining.  The Settlement comes after nearly 18 months of hotly contested litigation in which

both Parties were fully engaged in the issues and were fully aware of their import.  All Parties

were represented by sophisticated counsel and there is—and can be—no suggestion that any

Party had an unfair advantage or had reason to not vigorously negotiate the best deal it could

obtain.

## NO PRIOR RELIEF

33.      No prior request for the relief requested herein has been made to this or any other

court.

## NOTICE

34.      Notice of this Motion has been served on (a) all counsel of record for Defendants,

(b) all creditors with an interest in the Litigation Trust; (c) the United States Trustee for the

Southern District of New York; and (d) all parties who filed a notice of appearance and request

for documents in the case.

## CONCLUSION

35.      Wherefore, for the reasons set forth above, the Trustee respectfully requests that

the Court enter an order approving the Settlement in the form attached as <u>Exhibit B</u>, and grant

such other and further relief as is just.

Dated: April 27, 2015

/s/ Andrew N. Goldman
Andrew N. Goldman

WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for the Liquidating Trustee*

**Exhibit A – Settlement Agreement**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>GETTY PETROLEUM MARKETING INC., *et al.*,<br><br>      Reorganized Debtors. | Chapter 11<br><br>Case No. 11-15606 (SCC)<br><br>Jointly Administered |
| ALFRED T. GIULIANO,<br>as Trustee of The Getty Petroleum Liquidating Trust,<br><br>      Plaintiff,<br><br>  -against-<br><br>CAMBRIDGE SECURITIES, LLC, BJORN AASEROD,<br>JOSEPH SCOTT KARRO, and EISENBERG & CARTON<br><br>      Defendants. | Adversary Proceeding<br><br>No. 13-01720 (SCC) |

## SETTLEMENT AGREEMENT

Alfred T. Giuliano, Liquidating Trustee (the "Trustee" or "Plaintiff") for The Getty

Petroleum Liquidating Trust (the "Trust"), Bjorn Aaserod ("Aaserod"), Joseph Scott Karro

("Karro"), Cambridge Securities, LLC ("Cambridge Securities"), and Eisenberg & Carton

("Eisenberg") (collectively, the "Defendants"), Cambridge Petroleum Corporation ("Cambridge

Petroleum") and Cambridge Petroleum Holding Inc. ("Cambridge Holding," and together with

the Plaintiff, the Defendants, and Cambridge Petroleum, each a "Party" and collectively the

"Parties"), hereby enter into this settlement agreement (the "Settlement Agreement") as of April

27, 2015 and represent and agree as follows:

WHEREAS, on December 5, 2011, Getty Petroleum Marketing Inc. ("GPMI") and three of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Chapter 11 cases for GPMI and its subsidiaries are being jointly administered in the United States Bankruptcy Court for the Southern District of New York (the "Court") as *In re Getty Petroleum Marketing Inc.*, Chapter 11 Case No. 11-15606 (SCC) (the "Chapter 11 Cases");

WHEREAS, on November 26, 2013, the Liquidating Trustee commenced in the Court adversary proceeding no. 13-01720 (SCC) entitled *Giuliano v. Cambridge Securities, LLC, et al.*, against the Defendants (the "Adversary Proceeding");

WHEREAS, subject to the Court granting the concurrently-filed motion to approve this Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Settlement Motion"), the Parties have agreed to enter into this Settlement Agreement upon the terms and conditions stated herein;

NOW, THEREFORE, in consideration of the foregoing recitals, the promises, covenants, and releases herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be bound thereby, each Party agrees as follows:

1.      The Settlement.  Pursuant to the terms hereof, the Defendants, Cambridge Holdings and Cambridge Petroleum (the "Cambridge Parties"), on the one hand, and the Trustee, on behalf of himself and the respective estates of the Debtors, on the other hand, settle all Claims (as subsequently defined) between them arising out of or related to the Adversary Proceeding and the Chapter 11 Cases, as more particularly set forth in the respective releases of Sections 9

and 10 hereof (the "Settlement").  To effectuate the Settlement, the Cambridge Parties shall pay

to the Trustee the maximum sum of Six Million Four Hundred Thousand US Dollars

($6,400,000) (the "Maximum Amount"), payable, in cash or by delivery of documents, as the

case may be, as set forth in Sections 3, 4(c), 4(k) (subject to the provisions of Section 5), and

4(m) hereof (the "Obligations").  Upon the delivery by the Cambridge Parties to the Trustee of

the payments and documents required by such Sections, the Cambridge Parties shall be deemed

to have satisfied the Obligations in full, irrespective of whether the Trustee receives or recovers

the Maximum Amount, or any amount in excess of the payments required by Sections 3 and

4(m), or any of the JPA Payment.  In such case, the Trustee shall have no further or different

recourse against the Defendants or the other Cambridge Parties with respect to the Obligations,

and the Claims shall be deemed to have been released in accordance with Section 9 hereof as

more particularly set forth therein.  Notwithstanding the foregoing, nothing contained in this

Section shall limit or otherwise affect the Trustee's contingent right to receive the JPA Payment

and/or the Supplemental Litigation Payment, if and to the extent the recoveries from the State

Court Litigation are sufficient to make such payments, or the Trustee's rights against the

Cambridge Parties with respect thereto.

     2.    Effective Date.

     a.    This Settlement Agreement shall become effective on the date on which

all of the following conditions precedent (the "Conditions Precedent") have been satisfied

(or waived by the Trustee in its sole discretion) (the "Effective Date"): (i) the Court has

entered an order pursuant to Fed. R. Bankr. P. 9019 in the form attached to the Settlement

Motion as Exhibit B granting the Settlement Motion and approving the Settlement

Agreement in all respects (the "Rule 9019 Order"), which order shall be in form and

substance acceptable to the Trustee and the Defendants in their reasonable discretion; (ii) the Initial Settlement Payment (as defined herein) has been made by wire transfer to the Trustee; (iii) the Rule 9019 Order has become final and no longer appealable; (iv) the Trustee has received the Aaserod Property Appraisal (defined below) in accordance with Section 4(k) of this Settlement Agreement; (v) the Trustee has received from Aaserod the executed Aaserod Property Mortgage (defined below), subject only to the First Mortgage (defined below), in accordance with Section 4(k) of this Settlement Agreement; (vi) The Trustee has received the Property Interest Documents (defined below) in accordance with Section 4(c) of this Settlement Agreement; (vii) the Property Sale Transaction Documents (defined below) have been placed into escrow in accordance with Section 4(c) of this Settlement Agreement; and (viii) the State Court Litigation (defined below) has not been resolved or settled at the time all other Conditions Precedent have been satisfied, for any amount that would – after payment of all attendant fees and expenses – not result in the Trustee receiving the full amount of the JPA Payment (defined below).

b.      If any of the Conditions Precedent in section 1(a)(ii) through 1(a)(viii) has not been satisfied (or otherwise waived by the Trustee) within ten (10) days of the Rule 9019 Order becoming final and nonappealable, then, for the avoidance of doubt, this Settlement Agreement, including without limitation the releases and covenants not to sue set forth in paragraphs 9 through 11, shall not have become effective, shall be null and void *ab initio* and of no force or effect, and the Parties agree that the terms of this Settlement Agreement shall be subject to Rule 408 of the Federal Rules of Evidence and shall not be used or offered as evidence of any liability or fact in any legal proceeding.

3.      Initial Settlement Payment.  Within ten (10) days after the Rule 9019 Order

becoming final and nonappealable, the Defendants shall wire, or cause to be wired, to an

account designated by the Trustee, the sum of One Million Seven Hundred Seventy Five

Thousand US Dollars ($1,775,000.00) (the "Initial Settlement Payment").  Any extension

of such deadline shall be allowed in the sole discretion of the Trustee.

4.      Sale of Cambridge Petroleum's Interest in the Properties.

        a.      On or before the date that is six (6) months from the Effective Date (the

"Initial Sale Deadline"), Cambridge Petroleum shall, using a sales broker selected by the

Trustee, reasonably acceptable to Cambridge Petroleum (the "Broker"), sell all of its

right, title, and interest to the leasehold and contractual interests in the properties listed on

Exhibit A hereto (each individually, a "Property," and collectively, the "Properties")

through one or more sales to one or more purchasers, with the proceeds of such sales paid

to an escrow account with the Trustee or the Trustee's attorneys for disbursement in

accordance with the terms of this Settlement Agreement (each individually, a "Property

Sale," and collectively, the "Property Sales").[1]  Cambridge Petroleum represents and

warrants that it has good and marketable leasehold and contractual interests in and to the

Properties, it has not encumbered such leasehold or contractual interests, and, to the best

of its knowledge, such leasehold and contractual interests are free and clear of any liens

and encumbrances.  Other than through the Property Sales, Cambridge Petroleum shall

not sell, transfer, or otherwise dispose of, or encumber or permit to be encumbered, any

of its right, title, and interest to the leasehold or contractual interests in the Properties

before the Initial Sale Deadline or any Extended Sale Deadline, as applicable.

---

[1] For the avoidance of doubt, such interests include all fuel supply contracts with respect
to any of the Properties.

Cambridge Petroleum shall have no liability or obligation either to the Broker, or to any

other person, retained by the Trustee to effect the Property Sales, or for any costs and

expenses associated with the Property Sales or the closing of any such sale, all of which

obligations, costs and expenses shall be paid by the Trustee only from the proceeds of

such sales.  Any and all such Property Sales shall be subject to approval by the Trustee,

as described below, in its sole discretion.

b.      The Trustee may, in its sole discretion, extend the Initial Sale Deadline

one or more times beyond the Initial Sale Deadline (any such extended deadline, an

"Extended Sale Deadline").  No extension by the Trustee of the Initial Sale Deadline or

any Extended Sale Deadline shall have any effect on any other provision of this

Settlement Agreement, except as otherwise expressly set forth in this Settlement

Agreement.

c.      Within seven (7) days of the execution of this Settlement Agreement,

Cambridge Petroleum shall deliver to the Trustee all leases and other contracts related to

the Properties or its interests in the Properties as are in its possession, custody, or control,

which documents must be reasonably acceptable to the Trustee in its sole but reasonable

discretion (the "Property Interest Documents").  Within three (3) business days of the

Rule 9019 Order becoming final and nonappealable, Cambridge Petroleum shall execute

and deliver into escrow with the Trustee all customary and typical for property

transactions of the nature contemplated herein instruments and other documents, in form

and substance reasonably acceptable to the Trustee in its sole discretion, necessary and

appropriate to consummate each of the Property Sales (the "Property Sale Transaction

Documents").  The Property Sale Transaction Documents shall expressly provide that the

proceeds of the Property Sales shall be paid to an escrow account with the Trustee or the Trustee's attorneys for disbursement in accordance with the terms of this Settlement Agreement.  Cambridge Petroleum hereby makes and appoints Lloyd Eisenberg as its true and lawful attorney in its name, place, and stead, for the purpose of taking, with the consent of the Trustee, any actions necessary or advisable to consummate any or all of the Property Sales, including without limitation by modifying the terms of the Property Sale Transaction Documents in his sole discretion, in any manner he deems consistent with intent of the Parties hereto.   Cambridge Petroleum covenants and agrees that, from and after the Effective Date, it shall execute and deliver, or cause to be executed and delivered, all instruments and documents and take all other action, each consistent with its obligations under this sub-section (at its sole, but reasonable cost and expense), as the Trustee may from time to time reasonably request in order consummate any or all of the Property Sales.  Notwithstanding the foregoing sentence, the obligations of Cambridge Petroleum thereunder shall terminate at the conclusion of the Initial Sale Deadline or, if extended by the Trustee, the Extended Sale Deadline.

d.      At the closing of each of the Property Sales, the Trustee or the Trustee's attorneys shall distribute from the escrow account the proceeds of the Property Sale at issue as follows: (a) first, to pay third-party closing costs associated with the Property Sale, including the Broker's fees, costs and expenses, provided, however, that the Defendants and/or their affiliates shall not receive any direct or indirect payments under this provision; and (b) next, to the Trustee in full amount of the proceeds remaining after payment of the costs identified in clause (a) of this Subsection.  If any of the Parties disputes the distribution of any Property Sale proceeds, such Party may seek immediate

guidance from the Court, and the Parties shall be bound by any decision of the Court with respect thereto.  With respect to the sale process described in this section 4, Cambridge Petroleum and Defendants Aaserod, Karro and Cambridge Securities shall provide such financials relating to the Properties as reasonably may be requested by the Broker or any prospective buyer (provided none of them shall be required to create or present such financial information except in such form as it has been maintained by them historically), permitting (or arranging for permission for) site visits by the Broker and any prospective buyer to the Properties on reasonable notice and at such reasonable times during normal business hours, and being reasonably available to respond to inquiries by the Broker or the Trustee otherwise to facilitate the Property Sales.  The failure of the Broker to sell any or all of the Properties in and of itself shall not be deemed a breach of this Settlement Agreement.

e.      The Broker shall notify the Trustee, the Trustee's counsel, and the Defendants of any offer to purchase a Property (a "Purchase Offer") within twenty-four (24) hours of receipt of such Purchase Offer.  The Trustee shall have the sole discretion to accept or reject any such Purchase Offer, subject to the provisions of this Settlement Agreement.  The Trustee shall have at least five (5) business days to determine, in its sole discretion, whether to accept or reject a Purchase Offer (and to negotiate the terms of such Purchase Offer with the prospective buyer).  At the end of such period, the Trustee shall notify the Broker and the Defendants whether it has elected to accept or reject such Purchase Offer.

f.      If the Trustee elects to accept a Purchase Offer, Defendants Aaserod and Karro shall have three business days to submit a competing offer for the Property or

Properties subject to such Purchase Offer.  No competing offer will be considered by the Trustee unless, in the Trustee's reasonable judgment, after consulting with the Trustee's financial and legal advisors, such competing offer has been made on substantially the same terms and conditions as those set forth in the Purchase Offer, and the competing cash purchase price equals or exceeds the aggregate of (i) the purchase price of the Purchase Offer, plus (ii) 2.5% of the purchase price of the Purchase Offer.  If such competing bid is received, the Trustee may conduct an auction, on terms customary for the sale of assets in chapter 11 cases, acceptable to the Trustee in its sole discretion, to select the highest and best bidder for the Property or Properties, as determined in its reasonable business judgment and in its sole discretion.  The minimum bidding increment at any such auction shall be 2.5% of the purchase price of the immediately preceding competing offer.  At the conclusion of any such auction, the Trustee shall sell the Property or Properties to bidder with the highest and best offer, as determined by the Trustee determined in its reasonable business judgment.

g.    The applicable Property Sale Transaction Documents (as the same may have been modified by Lloyd Eisenberg, as provided in Section 4(c) hereof) may be released from escrow by the Trustee to the applicable buyer upon the closing of a Property Sale with no further action by the Defendants or Cambridge Petroleum.

h.    If the Trustee rejects any Purchase Offer, and the Defendants or Cambridge Petroleum object in writing to such determination, the Parties shall notify the Broker and the Court and request a status conference with the Court.  At such status conference, the Broker shall provide its independent views on whether the Purchase Offer should be accepted or rejected, for review and consideration by the Court.  The Parties

will be bound by any decision made by the Court with respect to any such Purchase

Offer.

       i.     If no Purchase Offer is received for a particular Property or Properties

and/or no Property Sale is consummated for a specific Property by the Initial Sale

Deadline or any Extended Sale Deadline, as applicable, and the Trustee decides not to

pursue additional marketing efforts, then the Trustee shall release the applicable Property

Sale Transaction Documents to Cambridge Petroleum, and for the purposes of calculating

the amount of the Sale Deficit and the Shortfall Funding Obligation, the net proceeds

with respect to such Property or Properties shall be Zero Dollars ($0).

       j.     From the date of this Settlement Agreement until the Initial Sale Deadline

or any Extended Sale Deadline, as applicable, the cash flow generated by the operation of

the Properties from and after the date of this Settlement Agreement may be used to pay,

consistent with past practices (to the extent an explanation of such practices has been

provided to the Trustee and the Trustee has accepted such explanation), only: (i)

operating expenses (owed to third parties unrelated to the Defendants) relating to the

Properties, (ii) expenses not in the ordinary course of the business of operating the

Properties (but only if and to the extent such expenses are necessary to maintain the

Properties, preserve the value of the Properties, or are required to be paid by law, rule, or

regulation, and including any such additional expenses that are related to the Properties),

(iii) amounts necessary to fund COBRA coverage for Donna Baumgartner and Scott

Hanley, to the extent required by applicable law and with such payments to terminate as

previously scheduled, provided that Ms. Baumgartner and Mr. Hanley reimburse

Cambridge Petroleum for such amounts within thirty (30) days after such amounts are

paid, provided further that, upon the failure of Ms. Baumgartner or Mr. Hanley to reimburse Cambridge Petroleum, Cambridge Petroleum shall terminate their respective coverage in the manner and to the extent permitted by law unless Defendants Aaserod and/or Karro make such reimbursements, and (iv) amounts necessary to fund health insurance for Defendants Aaserod and Karro, provided that Defendants Aaserod and Karro reimburse Cambridge Petroleum for such amounts within thirty (30) days after such amounts are paid.  No dividends, salaries, management fees, or any other amounts not expressly authorized herein shall be taken or received by the Defendants or Cambridge Petroleum.  For the avoidance of doubt, the restrictions contained in this Subsection shall not apply to cash that was on hand at Cambridge Petroleum before the Effective Date.  The Defendants and Cambridge Petroleum shall cause the Trustee to receive, at least as frequently as every other Friday, financial reporting concerning the Properties, substantially in the form previously provided by Defendant Karro to the Trustee, for the purpose of monitoring compliance with this Section.

k.      To address the possibility that the Trustee does not receive the sum of at least One Million Eight Hundred Thousand US dollars ($1,800,000.00) in net proceeds from the Property Sales (the "Minimum Sale Amount") by the Initial Sale Deadline or any Extended Sale Deadline, as applicable, and subject to the provisions of Section 5, Bjorn Aaserod shall, within three (3) business days of the Rule 9019 Order becoming final and nonappealable deliver to the Trustee a mortgage on the Aaserod Property (defined below) in the amount of Four Hundred Twenty Five Thousand US Dollars ($425,000.00), in form and substance reasonably acceptable to the Trustee in its sole discretion (the "Aaserod Property Mortgage").  The Aaserod Property Mortgage shall be

executed by Aaserod and his wife, Cynthia Aaserod.  The Trustee shall cause the Aaserod

Property Mortgage to be recorded in the applicable real property records.  Except as

otherwise provided herein, the Aaserod Property Mortgage shall be subject only to the

First Mortgage (defined below).  On or before the date the Rule 9019 Order has become

final and nonappealable, Aaserod shall have provided the Trustee with an appraisal of the

Aaserod Property (defined below) performed by a third party appraiser reasonably

acceptable to the Trustee, which appraisal reflects a value of at least Six Million US

Dollars ($6,000,000) (the "Aaserod Property Appraisal"), provided, however, that if the

appraised value of the Aaserod Property is less than Six Million US Dollars ($6,000,000),

it must be acceptable to the Trustee in its sole but reasonable discretion.

      l.      **Aaserod Property**.  Aaserod represents, warrants and covenants that he and

his wife, Cynthia Aaserod, own all right, title, and interest to the real property located at

146 West 57th Street, Apt. 76CD, New York, NY 10019 (the "Aaserod Property"), and

that their ownership as of the date hereof is free of any liens, claims or encumbrances

other than that certain mortgage dated May 4, 2004, in the amount of One Million Nine

Hundred Twenty Thousand US Dollars ($1,920,000), in favor of Washington Mutual

Bank, F.A. (the "First Mortgage"), and (b) from the date of this Settlement Agreement

until the Aaserod Property Mortgage is released and discharged in accordance herewith,

they shall not transfer or encumber, or permit to be encumbered the Aaserod Property

(other than by the First Mortgage and the Aaserod Property Mortgage) without the

written consent of the Trustee.  Aaserod hereby waives any rights or defenses to any

efforts by the Trustee to enforce any judgment obtained by the Trustee in connection with

this Settlement Agreement, including without limitation by executing against or foreclosing on the Aaserod Property.

      m.    Subject to the provisions of Section 5 hereof, if the Trustee has not received the Minimum Sale Amount by the Initial Sale Deadline or any Extended Sale Deadline, as applicable, Aaserod shall pay to the Trustee: (a) within thirty (30) days of the Initial Sale Deadline or any Extended Sale Deadline, the lesser of (i) Two Hundred Twenty Five Thousand US Dollars ($225,000.00) minus the Pre-Paid Amount (as defined below), and (ii) the Sale Deficit (defined below) minus the Pre-Paid Amount, or (b) if Aaserod does not make the payment specified in this Section 4(m)(a) within such thirty (30) day period, then within ninety (90) days of the Initial Sale Deadline or any Extended Sale Deadline, the lesser of (i) Four Hundred Twenty Five Thousand US Dollars ($425,000.00) minus the Pre-Paid Amount, and (ii) the Sale Deficit (defined below) minus the Pre-Paid Amount (such payment, the "Shortfall Funding Obligation").   For the avoidance of doubt, the "Sale Deficit" means an amount equal to the difference between (i) the Minimum Sale Amount and (ii) the net proceeds received by the Trustee under paragraph 4(d) of this Settlement Agreement from the Property Sale(s).  If Aaserod does not pay the Shortfall Funding Obligation when and as provided herein, the Trustee may exercise its rights under the Aaserod Property Mortgage, including without limitation by foreclosing upon the Aaserod Property, for the purpose of satisfying the Shortfall Funding Obligation.  For the avoidance of doubt, up to the Maximum Amount the Trustee may release from escrow and credit against its contingent right to receive the JPA Payment and the Supplemental Litigation Payment any net proceeds in excess of the Minimum Sale Amount.

5.      Pre-Paid Amount; Release of Aaserod Property Mortgage.

a.      Prior to the expiration of the Initial Sale Deadline or any Extended Sale Deadline, as applicable, Aaserod shall have the right, but not the obligation, to make a cash payment to the Trustee for the purpose of reducing the amount of the Aaserod Property Mortgage and the amount of the Shortfall Funding Obligation; provided that any such partial payment shall be in an increment of not less than One Hundred Thousand US Dollars ($100,000) (the aggregate of any such payments, the "Pre-Paid Amount").  In the event and to the extent Aaserod makes any such payments, the Aaserod Property Mortgage shall be reduced by the Pre-Paid Amount, and the document memorializing such mortgage, and any document filed in connection therewith, shall be amended by the Trustee within three (3) business days of any such payment to reflect such reduction in the amount of the Aaserod Property Mortgage.

b.      The Aaserod Property Mortgage shall be released and discharged in full and the Trustee shall take all acts, and shall cause the filing of any documents, necessary and appropriate to effect such release and discharge within three (3) business days of the earliest to occur of the following: (i) the Trustee has received the Minimum Sale Amount, (ii) the Trustee has received the Shortfall Funding Obligation, if and to the extent due hereunder, and (iii) the Pre-Paid Amount equals Two Hundred Twenty Five Thousand US Dollars ($225,000).

6.      Trustee's Retained Interest in Joint Prosecution Agreement.  For the avoidance of doubt, the Trustee, as the assignee of Cambridge Petroleum Headquarters LLC ("Cambridge Headquarters"), shall retain all interest of Cambridge Headquarters in the Joint Prosecution/Common Interest Agreement, dated November 8, 2011 by and among GPMI,

Cambridge Holding, Cambridge Headquarters, and Cambridge Securities (the "Joint Prosecution Agreement") relating to New York state court litigation, Index No. 65008/2012 (the "State Court Litigation").  Specifically and without limiting the foregoing, the Trustee shall be entitled to receive payment of One Million Six Hundred Thousand US Dollars ($1,600,000.00),  plus five percent (5%) interest, or such lesser amount finally recovered from the State Court Litigation, in accordance with the Joint Prosecution Agreement and this Settlement Agreement (the "JPA Payment").  The amount of the JPA Payment as of April 24, 2015 is One Million Eight Hundred Seventy Four Thousand Three Hundred Seventy Seven US Dollars ($1,874,377.00).  Interest on the principal amount of the JPA Payment shall continue to accrue at the per diem amount of Two Hundred Nineteen US Dollars ($219.00) until the JPA Payment is paid in full.  The JPA Payment shall be paid to the Trustee within five (5) business days of the receipt in Eisenberg's escrow account of any recovery (whether by judgment, settlement, or otherwise) in or relating to the State Court Litigation.  Nothing contained in this Section 6 shall grant, directly or indirectly, the Trustee any right to direct, settle, or otherwise participate in the State Court Litigation, Cambridge Holding retaining exclusively all rights to the management and settlement of such litigation.

7.    Trustee's Supplemental Interest in the State Court Litigation.  In addition to and without limiting the Trustee's existing interest in the State Court Litigation under the Joint Prosecution Agreement, the Trustee shall be entitled to ten percent (10%) of any recovery in or relating to the State Court Litigation (whether by judgment, settlement, or otherwise) in excess of the JPA Payment (the "Supplemental Litigation Payment").  The Supplemental Litigation Payment shall be paid to the Trustee within five (5) business days of the receipt in Eisenberg's escrow account of any recovery (whether by judgment, settlement, or otherwise) in or relating to

the State Court Litigation.  Nothing contained in this Section 7 shall grant, directly or indirectly, the Trustee any right to direct, settle, or otherwise participate in the State Court Litigation, Cambridge Holding retaining exclusively all rights to the management and settlement of such litigation.

8.      <u>Priority of JPA Payment and Supplemental Litigation Payment</u>. Notwithstanding anything to the contrary in the Joint Prosecution Agreement, any other agreement, or under applicable law, the Parties agree that any recovery in or relating to the State Court Litigation shall be paid to an escrow account maintained by Eisenberg and shall be paid by Eisenberg from such escrow account as follows:

   a.  Until the Trustee has received the full amount of the JPA Payment: 85% to the Trustee and 15% to Eisenberg; and

   b.  From the time the Trustee has received the full amount of the JPA Payment until the Trustee has received all amounts due to it under this Settlement Agreement: 10% to the Trustee (on account of the Supplemental Litigation Payment), with the remaining 90% to Cambridge Holding, subject to that certain letter dated December 2, 2011 between Eisenberg and Cambridge Holding, as amended.

9.      <u>Release by Trustee</u>.  The Trustee, for himself and on behalf of the Trust, the Debtors, the Debtors' bankruptcy estates, their respective successors and assigns, and anyone claiming by, through, or on behalf of any of them, upon the Effective Date, forever, fully, irrevocably, and unconditionally releases and discharges the Defendants and their respective predecessors in interest, successors in interest, family members, transferees, present and former affiliates, parents, subsidiaries and controlled companies, all past and present member firms, and

all of their present and former agents, representatives, officers, directors, managers, employees,

in their capacity as such, attorneys, consultants, accountants, partners, and the successors and

assigns of each of them (collectively, the "Trustee's Released Parties") from all manner of

claims for relief, causes of action, legal duties, obligations, covenants, contracts, controversies,

agreements, promises, damages, judgments, and demands whatsoever, of whatever kind or

nature, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated

or unliquidated, contingent or noncontingent, asserted or unasserted, matured or unmatured,

whether direct or indirect, individual, class, derivative, representative or other capacity, existing

or hereafter arising, in law or in equity, that have been or could have been asserted (or in the

future could be or might be asserted) (collectively, "Claims") based on any acts, omissions, legal

duties, representations, events or occurrences that transpired on or before the Effective Date,

including but not limited to all claims, counterclaims, and causes of action in the Adversary

Proceeding (such released claims collectively, the "Trustee's Released Claims").  This release,

however, shall not release, discharge, affect, or modify any claims arising from or relating to any

obligations, representations or warranties and covenants under this Settlement Agreement or,

with respect to transferees of the Defendants, any Claims not arising from or related to the

transfers that are the subject of the Adversary Proceeding.

     10.    <u>Release by Defendants</u>.  The Defendants and their respective successors and

assigns, and anyone claiming by, through, or on behalf of any of them, upon the Effective Date,

forever, fully, irrevocably, and unconditionally release and discharge the Trustee, the Trust, the

Debtors, the Debtors' bankruptcy estates, and their respective predecessors in interest, successors

in interest, present and former affiliates, parents, subsidiaries and controlled companies, all past

and present member firms, and all of their present and former agents, representatives, officers,

directors, managers, employees, in their capacity as such, attorneys, consultants, accountants,

partners, and the successors and assigns of each of them (collectively, the "Defendants' Released

Parties") from all Claims based on any acts, omissions, legal duties, representations, events or

occurrences that transpired on or before the Effective Date, including but not limited to all

claims, counterclaims, and causes of action in the Adversary Proceeding and all claims set forth

in any proofs of claims filed in the Chapter 11 Cases and any claims that Defendants might be

entitled to file under Section 502(h) of the Bankruptcy Code (such released Claims, collectively,

the "Defendants' Released Claims").  This release, however, shall not release, discharge, affect,

or modify: (a) any claims arising from or relating to any obligations, representations or

warranties and covenants under this Settlement Agreement, (b) any claims any of the Defendants

or any of their affiliates may have against Akin Gump Strauss Hauer & Feld LLP, including

without limitation the claims brought by Defendants Aaserod, Karro, and Cambridge Securities

as third-party plaintiffs in the Adversary Proceeding, or (c) any claims any of the Defendants or

any of their affiliates, including Cambridge Holding, may have against Lukoil Americas

Corporation, Lukoil North America LLC, OAO Lukoil, or any of their affiliates, including

without limitation the claims asserted in the State Court Litigation.

      11.    Covenants Not to Sue.  The Trustee, for himself and on behalf of the Trust and the

Debtors, and their respective successors and assigns, further covenants and agrees not to pursue

or prosecute any of the Trustee's Released Claims in any suit, claim, action, or proceeding

seeking recovery against or from any one or more of the Trustee's Released Parties.  The

Defendants, on behalf of themselves and their respective successors and assigns, further

covenant and agree not to pursue or prosecute any of the Defendants' Released Claims in any

suit, claim, action, or proceeding seeking recovery against or from any one or more of the

Defendants' Released Parties. Notwithstanding anything to the contrary contained in this Settlement Agreement, nothing contained in this Settlement Agreement shall prevent a Party from commencing an action or proceeding against any releasee under this Settlement Agreement for breach of any obligation, representations, warranties, or covenants under this Settlement Agreement.

12.    Judgment. From and after the Effective Date, in the event of any breach or default of this Settlement Agreement by any of the Defendants, Cambridge Petroleum, or Cambridge Holding, the Trustee may obtain – and the Defendants hereby consent to the entry of – a judgment against the Defendants in the amount of Six Million Four Hundred Thousand US Dollars ($6,400,000.00), plus interest, costs, attorney's fees, collection costs, and any other damages or relief resulting from such breach or default, as permitted by law, less any amount previously paid to or recovered by the Trustee under the Settlement Agreement (the "Judgment"). The Trustee shall be entitled to enforce and collect against Eisenberg only 5.5% of the amount of any Judgment. The Trustee may obtain the Judgment on five (5) business days' notice to the Defendants upon filing with the Court an affidavit of an attorney for the Trustee: (a) attesting that one or more of the Defendants, Cambridge Petroleum, or Cambridge Holding have breached or defaulted on one or more provisions under this Settlement Agreement, (b) specifying the specific provisions breached or defaulted on, the basis for any such alleged breach or default and the identity of the Cambridge Party or Parties alleged to have committed such breach or caused such default, and (c) specifying the amount of the Judgment requested by the Trustee and providing an accounting of all amounts received or recovered by the Trustee under this Settlement Agreement as of the date of the affidavit. With respect to defaults or breaches other than those relating to the failure to make payments as and when required under this Settlement

- 19 -

Agreement, in such 5 business days' notice period, the Defendants retain the right to (i) cure any

such default or breach, or (ii) raise any argument related to the default or breach with the Court

and seek relief therein.  For the avoidance of doubt, any default or breach relating to the failure

to make payments as and when required under this Settlement Agreement shall not be subject to

the five (5) business day cure period.  Any Judgment obtained by the Trustee in accordance with

this section shall not be enjoined by any other court, and the Defendants shall seek no other or

further relief with respect to the same.

13.     The Dismissal Stipulation.  Within five (5) business days after the Trust has

received all amounts due to it (or that may become due to it) under this Settlement Agreement,

the Trustee and the Defendants will sign, and submit to the Court to be so ordered, a dismissal

stipulation, substantially in the form attached hereto as Exhibit B, that will dismiss with

prejudice all Claims and causes of action that each Party has, had or may have against any of the

other Parties in the Adversary Proceeding.

14.     Representations, Warranties, and Covenants.  Each Party hereto represents,

warrants, and covenants solely with respect to itself that (a) it is authorized to execute this

Settlement Agreement, subject, with respect to the Trustee, to the Court granting the Settlement

Motion, (b) it has had the opportunity to consult with counsel and has been fully and adequately

informed as to the facts, circumstances and consequences of this Settlement Agreement, (c) each

and every warranty and representation contained herein, to the best of that Party's knowledge, is

accurate and complete, and (d) the execution and delivery of this Settlement Agreement and the

consummation of the transactions contemplated herein by the Parties and signatories shall not

(i) violate or conflict with any judgment, decree, or order of any court applicable to or affecting

that Party, subject to the Court granting the Settlement Motion, (ii) breach the provisions or

constitute a default under any contract, agreement, certificate of formation, by-laws, or

obligation to which the Party is a party or by which the Party is bound, or (iii) violate or conflict

with any law applicable to the Party.

15.    Binding Effect.  This Settlement Agreement shall be binding upon each Party and,

in the case of the Trustee, the estate of each Debtor and any person or entity claiming by or

through such estate, and each of such Party's agents, representatives, successors, successors-in-

interest, affiliates and assigns, and all of its or their respective members, shareholders, partners,

officers, directors, managers, employees, subsidiaries, affiliates, insurers, trustees, agents and

representatives, to the extent provided herein, upon (a) each Party's representative signing this

Settlement Agreement in the signature blocks set forth below and (b) the Court granting the

Settlement Motion.

16.    Entire Agreement.  Each Party agrees that this Settlement Agreement constitutes

the entire agreement between the Parties and supersedes all prior or contemporaneous written or

oral communications, understandings, and agreements with respect to the subject matter hereof.

It is expressly understood and agreed that this Settlement Agreement may not be altered,

amended, modified, or otherwise changed in any respect whatsoever except by a writing duly

executed by each Party or their authorized representatives.

17.    No Interpretation Against Drafter.  The Parties cooperated in the drafting of this

Settlement Agreement, and therefore the provisions hereof shall not be construed against any

Party as if it was the sole drafter of the Settlement Agreement.

18.    Notice.  To the extent any notice or any written communication to a Party is

required by this Settlement Agreement, it shall be deemed to have been duly given when

transmitted by overnight mail (return receipt requested)—with a copy sent by electronic mail—

addressed to the addresses of the representatives of the applicable Party set forth in the signature blocks to this Settlement Agreement.

19.     <u>Costs and Expenses</u>.  Except as otherwise provided herein, each Party shall bear its own costs, attorneys' fees, and expenses in this matter.

20.     <u>Severability</u>.  In the event that any term or provision of the Settlement Agreement is deemed invalid, unenforceable, or void by a final, non-appealable judgment of a court of competent jurisdiction, the remainder of the Settlement Agreement shall be interpreted to the extent possible to effect the overall intention of the Parties as of the Effective Date.

21.     <u>Governing Law</u>.  Interpretation of the terms and conditions of this Settlement Agreement are to be construed in accordance with the laws of the State of New York, irrespective of and without regard for any conflicts or choice of law principles that would result in the application of the law of another jurisdiction, as to all matters, including matters of validity, construction, effect, enforceability, performance, and remedies.

22.     <u>Jurisdiction</u>.  The Parties hereby consent to the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of New York for all matters, disputes, and controversies relating to this Settlement Agreement.

23.     <u>Counterparts</u>.  This Settlement Agreement may be executed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto were on the same instrument, and such counterparts shall be construed together as one instrument.  Facsimile or pdf signatures shall be deemed original signatures.

*[Signature page follows]*

**ALFRED T. GIULIANO, LIQUIDATING TRUSTEE FOR THE GETTY PETROLEUM LIQUIDATING TRUST**

*By its attorneys*

/s/ Andrew N. Goldman_____
Andrew N. Goldman
andrew.goldman@wilmerhale.com
WILMER CUTLER PICKERING HALE
   AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York  10007
Telephone:  (212) 230-8800
Fax:  (212) 230-8888

**CAMBRIDGE SECURITIES, LLC**

By: /s/ Bjorn Aaserod_____
Bjorn Aaserod
Title: Managing Member
255 W. 36th Street
New York, NY 10018

**CAMBRIDGE PETROLEUM CORPORATION**

By: /s/ Bjorn Aaserod_____
Bjorn Aaserod
Title: Chief Executive Officer
255 W. 36th Street
New York, NY 10018

**EISENBERG & CARTON**

*By its authorized representative*

/s/ Lloyd Eisenberg_____
Lloyd Eisenberg, Partner
leisenberg@eisenbergcarton.com
1227 Main Street, Suite 101
Port Jefferson, New York 11777
Telephone: (631) 213-8282

/s/ Bjorn Aaserod_____
Bjorn Aaserod
146 West 57th Street, Apt. 76CD
New York, NY 10019

/s/ Joseph Scott Karro_____
Joseph Scott Karro
222 E. 34th St., Apt. 1029
New York, NY 10016

**CAMBRIDGE PETROLEUM HOLDING INC.**

By: /s/ Bjorn Aaserod_____
Bjorn Aaserod
Title: Chief Executive Officer
255 W. 36th Street
New York, NY 10018

# Exhibit A

# (Properties)

1. 795 West Main Rd., Middletown, RI 02842
2. 3333 South County Trail, East Greenwich, RI 02818
3. 266 Park Ave., Cranston, RI 02905
4. 3031 Mt Carmel Ave., Glenside, PA 19038
5. 7000 Post Rd, North Kingstown, RI 02852
6. 266 Middle Turnpike West, Manchester, CT 06040
7. 467 Closter Dock Rd., Closter, NJ 07624
8. 1008 Amwell Rd & Main Street, Millstone, NJ 08844

# EXHIBIT B
# (DISMISSAL STIPULATION)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>GETTY PETROLEUM MARKETING INC., *et al.*,<br><br>          Reorganized Debtors. | Chapter 11<br><br>Case No. 11-15606 (SCC)<br><br>Jointly Administered |
| ALFRED T. GIULIANO,<br>as Trustee of The Getty Petroleum Liquidating Trust,<br><br>          Plaintiff,<br><br>    -against-<br><br>CAMBRIDGE SECURITIES, LLC, BJORN AASEROD,<br>JOSEPH SCOTT KARRO, and EISENBERG & CARTON<br><br>          Defendants. | Adversary Proceeding<br><br>No. 13-01720 (SCC) |

**STIPULATION AND CONSENT ORDER
PURSUANT TO FED. R. CIV. P. 41(a)
<u>DISMISSING ADVERSARY PROCEEDING WITH PREJUDICE</u>**

Alfred T. Giuliano, Liquidating Trustee for the Getty Petroleum Liquidating Trust, together with Bjorn Aaserod, Joseph Scott Karro, Cambridge Securities, LLC, and Eisenberg & Carton (each a "<u>Party</u>" and collectively the "<u>Parties</u>"), by and through their respective undersigned counsel, hereby enter into this stipulation and represent and agree as follows:

Pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, the Parties agree that the above-captioned adversary proceedings (and all claims and counterclaims that have been or could have been asserted therein) are dismissed and discontinued with prejudice and that each Party shall bear its own costs and expenses relating thereto.

Dated:

**ALFRED T. GIULIANO, LIQUIDATING TRUSTEE FOR THE GETTY PETROLEUM LIQUIDATING TRUST**

*By its attorneys*

_____

Andrew N. Goldman
andrew.goldman@wilmerhale.com
WILMER CUTLER PICKERING HALE
   AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York  10007
Telephone:  (212) 230-8800
Fax:  (212) 230-8888

**CAMBRIDGE SECURITIES, LLC**

*By its attorneys*

_____

Lloyd Eisenberg
leisenberg@eisenbergcarton.com
1227 Main Street, Suite 101
Port Jefferson, New York 11777
Telephone: (631) 213-8282

**EISENBERG & CARTON**

*By its authorized representative*

_____

Lloyd Eisenberg, Partner
leisenberg@eisenbergcarton.com
1227 Main Street, Suite 101
Port Jefferson, New York 11777
Telephone: (631) 213-8282

**BJORN AASEROD AND JOSEPH SCOTT KARRO**

*By their attorneys*

_____

Lloyd Eisenberg
leisenberg@eisenbergcarton.com
1227 Main Street, Suite 101
Port Jefferson, New York 11777
Telephone: (631) 213-8282

**THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:** The above-captioned

adversary proceedings are dismissed and discontinued without costs and with prejudice pursuant

to Rule 41(a) of the Federal Rules of Civil Procedure.

_____
**HON. SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit B – Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br><br>GETTY PETROLEUM MARKETING INC., *et al.*,<br><br>                       Reorganized Debtors. | Chapter 11<br>Case No. 11-15606 (SCC)<br>Jointly Administered |
| ALFRED T. GIULIANO,<br>as Trustee of The Getty Petroleum Liquidating Trust,<br><br>                    Plaintiff,<br><br>           -against-<br><br><br>CAMBRIDGE SECURITIES, LLC, BJORN AASEROD,<br>JOSEPH SCOTT KARRO, and EISENBERG & CARTON<br><br><br>               Defendants. | Adversary Proceeding<br><br>No. 13-01720 (SCC) |

**[PROPOSED] ORDER APPROVING SETTLEMENT OF CLAIMS**
**AGAINST CAMBRIDGE SECURITIES, LLC, BJORN AASEROD,**
**JOSEPH SCOTT KARRO, AND EISENBERG & CARTON**

Upon consideration of *the Liquidating Trustee's Motion, Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the United States Bankruptcy Code, for Approval of Settlement of Claims Against Cambridge Securities, LLC, Bjorn Aaserod, Joseph Scott Karro, and Eisenberg & Carton* (the "Motion"),[1] and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and all parties in interest; and it appearing that the notice of the

---

[1] Capitalized terms herein not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or the Settlement (as defined in the Motion).

Motion is sufficient, adequate, and timely under the circumstances of this case and that no other or further notice need be provided; and a reasonable opportunity to object or be heard regarding the Motion having been given to all parties; and a full and fair opportunity having been afforded to litigate all issues raised in all objections, or which might have been raised; and upon all of the proceedings before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.      The Settlement is the product of arm's length negotiations among the Parties and was negotiated, proposed and entered into by the Parties without collusion and in good faith;

B.      The Settlement and the relief requested in the Motion and granted herein are fair and equitable and in the best interests of the Debtors, their estates, their creditors and all other parties in interest;

C.      The Settlement falls within the range of reasonableness, is in the best interests of creditors, is supported by the Trustee, the majority of the Oversight Committee, and experienced and knowledgeable counsel after a lengthy mediation;

D.      Without the Settlement, continued complex and protracted litigation is likely and the probability of a more favorable result for the Liquidating Trust and the creditors is uncertain;

E.      The releases granted in the Settlement are reasonable;

F.      Each Party has the capacity to execute the Settlement as described in the Settlement attached to the Motion as Exhibit A;

G.      Entry of this Order is a condition precedent to the effectiveness of the Settlement; and

H.      The legal and factual bases set forth in the Motion establish just cause for the relief requested in the Motion.

2

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    The Notice of the Motion was adequate, sufficient and in satisfaction of applicable law.

2.    The Motion is granted in all respects.

3.    The Settlement, attached to the Motion as Exhibit A, including all terms and conditions therein, is approved in all respects, and its terms incorporated by reference into this Order, and the Parties are authorized and directed to perform all of the obligations thereunder and to execute and deliver all such other documents or instruments related to the Settlement, and to take all other actions reasonably necessary or appropriate to perform their obligations under the Settlement.

4.    All releases provided for in the Settlement are hereby found to be reasonable and are approved and shall be binding upon each Party and each of such Party's respective successors and assigns.

5.    This Order, and the terms and conditions of the Settlement, shall be immediately effective. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the Parties are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, unless otherwise provided herein or in the Settlement and (ii) the Parties may, without further delay, take any action and perform any act authorized under this Order.

6.    The lack of any specific description or inclusion of any particular provision of the Settlement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Settlement be approved in its entirety.

3

7.      In the event of any discrepancy between the Settlement and this Order, the terms of the Order shall govern.

8.      In the event the Settlement terminates pursuant to its terms, the Parties are ordered to promptly notify this Court of such termination at which time this Order shall be vacated and have no further force and effect, with the Parties returned to the position the Parties were in as if the Settlement had not been executed and this Order had not been entered.

9.      This Court shall retain exclusive jurisdiction and authority to hear and determine any and all matters arising from, or relating to, the interpretation or implementation of the Settlement and this Order.

Dated:  _____, 2015
        New York, New York


        _____
        HONORABLE SHELLEY C. CHAPMAN
        UNITED STATES BANKRUPTCY JUDGE